Our next case is No. 24-12-51, Secretary of the Army v. StructSure Projects, Inc. Okay, Mr. Rayl. Your Honor, may it please the Court. According to the ASPCA's own findings, the Sovereign Act prevented Structure from accessing the worksite, which delayed Structure's completion of the renovation of the Medical Center, which in turn caused Structure to incur increased costs for its temporary medical facilities than it provided under the Structure Express Passport. These findings demonstrate that the Sovereign Act's doctrine precludes Structure from recovering increased costs for its temporary facilities. How did the base closure affect their ability and obligation to provide temporary Structure? Well, the base closure delayed the completion of the project. That was the overall project, but it didn't have any effect on the temporary Structure other than it extended the time that the government was going to use that, right? Right. It extended the time that the government was going to use that because it delayed Structure's completion of the project. And so the delay in the completion of the project was caused by a Sovereign Act. That's undisputed. And so that's why the Sovereign Act, these increased costs are due to a Sovereign Act here. The delay in the completion of the project is caused by the COVID-19 shutdown. Well, I mean, if you had a situation where they rented a piece of equipment that lay idle, you'd probably be right that the base closure created a situation where that equipment couldn't be used and they had to pay additional rental fees on it and they wouldn't be able to recover that. But this is a different situation where the government is taking advantage of the temporary housing during the extended period. In other words, there's performance there by the contractor. There's not performance that's prevented. It's performance that's extended. The Structure was required to provide the temporary facilities while the David Grant Medical Center was unusable due to the renovation. And so that's what Structure did. Now, they ended up having to provide those facilities for about three months longer than they were anticipating due to a Sovereign Act, due to the delay in the completion of the medical center. That's what caused Structure to have to provide the temporary medical facilities for longer than it anticipated. It fulfilled its duty under the contract to provide the temporary medical facilities while the renovation rendered the portions of the medical center unusable. What is your best case law or regulation for the prospect that we should be looking at completion of the rest of the project versus completion of the line item of providing the temporary facility? That seems to be, this case seems to come down to how you look at it. Is it that they were delayed in completing the rest of the project and therefore the government had to use the temporary facility for longer? Or is it, you know, that they provided the temporary facility, they fulfilled their obligation, and the government had the benefit of using that facility? Well, they fulfilled their obligation, exactly. And so because they fulfilled their obligation, and this is a firm fixed-price contract, Structure's entitled to be paid the agreed-upon amount, the agreed-upon firm fixed price that's in its contract, but nothing more than that. Structure did what it was supposed to do here, but the increased costs that are above and beyond what they anticipated are due to a Sovereign Act. Suppose that there were two separate contracts here. There was a contract to renovate the facility and there was a separate contract to provide the temporary facility during the other construction. Wouldn't the Sovereign Act's doctrine under those circumstances excuse the government from liability under the second contract for the extended period that the temporary facility was used? If the second contract also provided that the contractor was to provide the temporary medical facilities while the renovation was ongoing, then yes. If it was just a firm contract for, say, a rental contract for 12 months or something, and the government needed additional time, perhaps not in that situation. I'm not understanding what your answer is. Two separate contracts. The two line items here are separated into two contracts. The second contract for the temporary facility, the period the temporary facility is needed is extended. Do they get an equitable adjustment? It depends on how the second contract is made. If the other contract requires the contractor to provide the temporary medical facilities during the period of the renovation. Two separate contracts. The second contract about the temporary medical facilities, if it requires the contractor to provide those facilities simply during the time of the renovation, while the renovation is rendering the medical center unusable, then yes, the Sovereign Act's doctrine would apply. It would apply to the second contract. Yes. In that situation, like we have the situation that we have here. I'm not sure you answered my question. I think you did, but the question I had was what case law or regulation do you think best supports your position for explaining why it is that we should be focusing on the delayed completion of the project? And I know you said firm fixed price, so maybe that's what you're referring to, but could you elaborate for me, please? Yeah, I think that's the main answer, that this is a firm fixed price contract, FAR 16-202-1. I believe is the site in our briefs. The maximum risk for costs are on the contractor, and the contractor's responsible for profit and loss under that case. So the CLIN for the temporary facilities had a set price. Yes. It didn't have a specific term of months, it was just tied to completion of the project? Correct. There was an end term for the project, and that got extended due to the stop and ask. But if there had been government caused delay to the project, that's compensable. The government is a contractor, yes. Then they could have gotten, under the changes clause, increased compensation. Correct, if the government is a contractor caused delay. Because even under a firm fixed price contract, they don't bear the risk of government caused delay, they bear the risk of their own delay, and under the Sovereign Acts Doctrine, Sovereign Acts. Correct, yes. I mean, it's a little confusing in this case because of the separate CLIN, and I'm a little confused about some of our case law on this, and how the impossibility doctrine comes into play here, which is where I think the board also found that the performance of this CLIN wasn't rendered impossible by the Sovereign Acts. And I take it your argument is it actually was rendered impossible within the time frame covered by the contract because of the Sovereign Act. I didn't see a clear articulation of that argument anywhere to the board. Well, that's where it gets a little confusing with the impossibility here, because to the extent the impossibility doctrine would apply, as in breach cases, which this is not, but in a breach case, when it would apply, it's about whether the government's performance is impossible, not about whether the contractor's performance is impossible. So there's been no allegation that the government breached the contract in this case. That's why the impossibility doctrine has no relevance to the Sovereign Acts Doctrine in this particular case, as shown by cases like Zephyr and Amino Brothers that we cited in our breach, to the extent that it was considered a breach that the government didn't provide access to the work site for 40 days, then we have demonstrated the impossibility doctrine applies, because it was impossible for the government and contractor to provide that access for 40 days due to the Sovereign Act. So there's no breach and no impossibility with respect to this aspect of the contract to provide the temporary facility? There's been no allegation of a breach of the contract at all in this case. The allegation is that the structure is entitled to an equitable adjustment under a changes doctrine. I mean, if you view the Sovereign Acts Doctrine as excusing government breaches, which is the way it's been described, that doesn't apply here, right? Well, it's been described in cases that involve breach like that, but in a case like Zephyr there was no mention of impossibility in that case, and that was a case where the Sovereign Acts Defense was applied in a changes case, in an equitable adjustment case. So there are cases out there where the impossibility doctrine is not applied if it's a situation where it's a changes clause and not a breach. The impossibility only really makes sense in a breach case, because if the plaintiff's not alleging that the government failed in any performance, then how can the government demonstrate that it was impossible to perform? The government shouldn't have to demonstrate that it breached the contract. What's the scope of the doctrine if you say it's not limited to breach situations? Well, it has to be a public and general act that's not directed at nullifying contract rights, and the contract can't otherwise provide for payment of side acts. How does it function? What does it do? If it's not excusing a government breach, what's it doing? It precludes the contractor from recovering for government-caused delay, government-caused damages, because it was caused by the government as sovereign, not by the government as a contractor. See, I'm getting to my rebuttal time. All right. You deserve it. All right. Mr. Stig. Mike Tyson once said everybody's got a plan until they get hit in the mouth. I have a plan. I have all my notes written. And I'm going to leave him alone. Judges, this is not complicated, and I think the Court understands that. This is an issue of whether or not the government breached its agreement with my client, and they did, and whether or not that breach is excusable because of impossibility, and it's not. And we know that because... What was the contract that was breached? What were the terms, and why was it impossible to fill those terms? Well, the original contract was to have the TPF to two TPFs located there on the base. For the benefit of the students in the room, TPF, could you say what that is? Temporary Phasing Facilities. They're modular buildings. In this case, they're used for an oncology ward and a pediatric ward. There was a fixed price for 13 months. The government... And that part of the performance wasn't stopped? It was not. They delivered the TPFs. The TPFs were there. They were in full use, even during the additional three to six months that the Army continued to use them. And what caused the additional months? The base closed down because of COVID precautions. But by that point... That's a sovereign act. I'm sorry? That's a sovereign act. I think the government agreed that if the additional time was due to the government as a contractor, it would be compensable. But the additional time for these units, even though they were being used, wasn't due to the government's act as a contractor. It was due to the government acting as a sovereign. Well, Judge, the shutdown was the government acting as the government, as the sovereign. But that part of the contract had been completed. But it hadn't. You just said that the contract was to provide these during the construction period, which was originally anticipated to be, what you said, 13 months. And it turned out that it took longer to complete that contract. And so, it wasn't complete. I mean, if it was complete at 13 months, you would have gotten your firm fixed price, and that would be it. That's correct, Judge. To clarify, I didn't say that these that CLIN 06 was limited to the construction period. I said that they were contracted to provide them for 13 months. And they did. They delivered them. They built them. They set them up. They plugged them in. And they're ready to go for 13 months. Judge, I guess the analogy that I would give you is to... Well, where did the additional time come from, then? I'm sorry? You got paid for 13 months, right? Correct. But you want more money. And what's that due to? If you say it's a breach, then what was breached? Well, the government continued to use them beyond 13 months. Well, that's not a breach. I thought the government... I thought they were agreeing with you that this is not a situation where there was a government breach or impossibility. They're saying the doctrine goes beyond that. That seems to be the question. And now you're talking about breach. I don't know what the government breach was. I mean, if you're arguing this as a breach case, then they've clearly shown impossibility to perform within the 13 months because it was extended due to the COVID shutdown. I don't think this is the way the board looked at this as an impossibility case. I mean, the board's decision is a little confusing to me because I talk about impossibility. But the real question is, does the sovereign acts apply beyond the breach situation to change cases where the change is caused by a sovereign act versus something else? Right, Your Honor. What's your position on that? I think that the change in terms imposed by the government are compensable, Judge, and they have to be compensable. Why? Because that portion of the because the terms and conditions of that claim have been fully met and the government was using them. There's nothing more for my client to do at that point. My client did not assume the burden of indefinite use. I guess the analogy... Sure they did. If it was a sovereign act, that's built into the understanding our precedent, the Supreme Court's precedent, built into government contracts the notion that the government as a contractor doesn't bear liability for acts done by the government as a sovereign. So if the delay in the 13-month period was caused by the government as a contractor, then you get money for it. If it was caused by the government acting as a sovereign, you don't. Why was it caused by the government acting as a contractor? Unless your argument is it doesn't apply to changes at all, in which case you need to address what Zaper was doing. Let me clarify one of my comments earlier that I think got this off track. I'm not suggesting that the government breached the original contract. I'm saying that the government... Okay, let's stop talking about breach. Nobody understands this as a breach case. This is a changes case. Correct. Does the sovereign acts doctrine apply to changes cases? If the change in the contract that incurred additional costs for the contractor were due to a sovereign act. Does the sovereign acts doctrine apply in those situations? Well, no. So what was Zaper doing? I'm sorry? Zaper is a changes clause case where we apply the sovereign acts doctrine. And why wouldn't it apply? Judge, I think it doesn't apply because when the government imposes a change, the change to fundamental terms and conditions... No, the... Look, what we have is this is different from other cases in one respect. Usually the sovereign acts doctrine prevents contractor performance and thereby increases the government cost. I think that was the Zaper case. This is a different case in which the government sovereign act requires additional performance from the contractor, which benefited the government. It's not a situation in which performance is prevented. Because this line item for the temporary facility wasn't performance prevented. It was additional performance that was required. That has to be the distinction. No? Yes, sir. I think that is the fundamental distinction. The original requirement for 13 months... What's the legal basis for that distinction mattering? Isn't the sovereign acts doctrine designed to alleviate the government from liability as a contractor based on sovereign acts of the government as a sovereign? What difference does it make that the performance was extended by the sovereign acts versus stopped by the sovereign acts? Both cause damages to the contractor that were not agreed by the government as a contractor to be borne by the government as a contractor. Judge, the government doesn't get to impose additional costs on the contractor. How long does that go? I mean, if it's another year... Isn't that exactly the point of the sovereign acts doctrine? That when the government is acting as a sovereign, its entity as a contractor should be treated no different than a private contractor. If this had been between two private parties and this whole construction had shut down and you'd try to come in and try to get the private hospital to pay for this because you'd given it longer, they would have said, the delay wasn't on us, it was on the government acting as a sovereign. It's not attributable to us. Under your fixed price contract, it's attributable to you because that's built into a fixed price contract. Well, sure, Judge, but if I contract with HCA to do something similar, HCA doesn't get to say, I'm keeping your TPF for the next three months, six months, or nine months, and you're just going to have to eat it. I mean, if you contract with them to provide these facilities for the duration of the renovation project, and the renovation project is extended by a sovereign act, then sure they do. But, Judge, they weren't contracted to do it for the duration. They were contracted to do it for 13 months. Which was the duration of the project until the sovereign act doctrine came in, or until the sovereign act itself came in. I mean, you don't dispute that the delay here was due to a sovereign act, do you? I don't disagree with that at all, Judge. Right, if the base hadn't been shut down, then they would have finished the contract within the time period. I think we could assume that, but, Judge, I think the critical issue is they met their burden. They were there for 13 months, they had the TPFs there, that's what they were contracted to do, and that's what they paid to do, and then additional burdens were placed on them. There was no breach. Counsel, I have a question. So you agree that the delay in the completion of the contract was caused by a sovereign act. That is, you know, almost something we're not going to hold the government as a contractor accountable for. And so why is it, then, if it's something we're not going to hold the contractor accountable for, why is it that in this case we would hold them accountable for it? Two reasons. The first one is that if you view the sovereign acts doctrine as a method of treating the government equally, in the same position they would be in if they were a private contractor, that's not what that scenario does. That scenario puts them in a better position than it would if they were a private contractor. You're saying they're in a better position because they had to use the temporary facilities. They had the right to use them, right? Is that what you're saying? You're saying it's a better, what exactly makes it a better position for them? Because they gain the benefit of using the facilities for an extended period of time. Don't you think that they would have preferred to have their renewal-completed facilities over the temporary facilities? Judge, I don't know the answer to that. What I do know is that there's a value associated with each day of the TPS. There are two parties. One is better positioned than the other to assume that burden. And there's no legal requirement for the contractor to share the burden with the government. So your view is that the burden should be on the government because the government is the one who got to continue to use the facilities. I understand that. But what law do you have to support that? Judge, the doctrine says that we turn if the doctrine applies. And I don't agree that it does here because I don't think there was a breach. And if there's no breach, there can be no The doctrine excuses government breaches and there wasn't a government breach here that affected this performance. I'm sorry, sir. The doctrine is designed to excuse government breaches, right? Yes, sir. And there's no breach with respect to the temporary facility. Yes, sir. That's exactly How do you distinguish Zafir then? I'm sorry? How do you distinguish Zafir? What was the breach in Zafir? I don't know, Judge. Was there a breach in Zafir? I think the holding in this court was that there was a... I think the court said that there was a breach. If I contract with you to fix my home... The breach was the closure of the roof, right? They couldn't transport the materials. I believe that is correct, Judge. If I contract with you to fix my home, and part of that is to redo my closet, you could then contract with me as a side agreement to rent me a U-Haul to put my clothes in. If in the course of remedying my home or repairing my home there's a gas explosion, it's not your fault and it's not my fault. And I want to continue using the U-Haul that you have made available to me. If it's a fixed price for 12 months The problem with this example you're giving is that it doesn't involve a sovereign act at all. It's not analogous to this situation. The situation you need to be talking about is if you're renovating your closet and the government sends out a stop work order as the sovereign saying because of this dangerous situation nobody is allowed to go into anybody else's homes to work. And that causes additional costs for the U-Haul. Who bears the cost then? Is it the homeowner? They didn't cause the delay, the government caused the delay. Yeah, but the contractor didn't cause the delay either. That's the entire point of the Sovereign Acts Doctrine. That the contractor may not have caused the delay, the government caused it as a sovereign, not as a contractor. You agree that the government didn't cause the damage here as the contractor. Judge, I agree with that, but there is no breach. So your view is fundamentally that the Sovereign Acts Doctrine only applies when there's a breach. Yes. That's exactly right. They contracted under CLIN 06 to do a thing. They did the thing. They delivered the TPS. The fact that the government used them for 90 or however many additional days as it's calculated doesn't matter. What matters is they were contracted to do a thing and they did it. Okay. I think unless there are other questions, we're out of time. Thank you, Mr. Rayl. Suppose here the contractor had said, well, by shutting the base down, you're preventing our performance and we're going to stop providing the temporary facilities. Did they hit on that? Well, the contractor required them to provide the temporary facilities during You know, the contract is stopped and the temporary facility, as you say, is part of the contract. We're not going to provide the temporary facility anymore until the government shutdown of the base is over. Could they have done that? That would not have been consistent with the contract in this case. So they had to provide the temporary facility. They had to continue the performance, right? They had to continue that aspect of the performance. And again, because that's what the contract required. I see nothing in the contract requiring the requirement structure to have the temporary facilities. What case says the sovereign acts can appropriately require additional performance from the contractor? That's the thing. It didn't require additional performance in this case. Again, I see nothing in the contract requiring structure to perform the plan 6 for 13 months. Well, you just said they had to. They could stop. While the renovation, while the medical, David Grant Medical Center was unusable due to the renovation. And you can see this in the They couldn't stop. They couldn't say the base is closed. We can't continue with the contract. We're going to stop all performance. They couldn't do that. Well, they had to stop the construction, which caused the delay. Well, they couldn't stop the performance insofar as the temporary facility was concerned, right? Right, because the temporary facilities were to be provided until the renovation was complete. And we see it in Joint Appendix 1401 in their structure's own proposal, or its predecessor company, that occupants of the areas to be renovated will be relocated to the TPF building or temporary swing space. Once a phase is complete, the construction phase, the occupants will return and occupy their newly renovated space. The structure was required to provide these phasing facilities while the renovation was ongoing and the David Grant Medical Center was unusable. The structure did that, and so they're entitled to be paid the firm fixed price that is in the contract. There's nothing in the contract as far as that's concerned. What case says that the government can insist on additional performance from the contract under circumstances like this? It didn't. The government did not insist on additional performance here. No, it didn't. It wanted to continue to use the temporary facility, right? Pursuant to the contract, yes. That's what the contract required for however long that renovation took. Now, in this case, there's no dispute that the delay wasn't the structure's fault. The delay was the government's fault. But it was the government as a sovereign in this case. I don't think you have an answer to my question. My question is what case says that as a result of sovereign acts, the government can insist on additional performance from the contractor? Well, I don't know if there's a case specifically stating that, but the general principle of the sovereign acts doctrine is that the government is not going to be responsible for altering, modifying, or violating the contract as a result of the sovereign act. That's the Horowitz case. We've got cases like Zaper that applied to a change. There was no allegation of a breach. Yeah, but Zaper is not a situation where the government was requiring additional performance. It was closing the route so they couldn't perform the contract and they incurred additional costs as a result of the non-performance. Right. The government said, even though the route is closed, get it done pursuant to the terms of the contract. So that's kind of what we would have here. Structure was required to get Claim 6 done regardless of the fact that it would be completion of the medical center was delayed. So increased costs are caused by the delay here, and that was caused by a sovereign act. So the government is not liable for that due to the sovereign acts doctrine. Unless the Court has any further questions, I respectfully request that the Court reverse the Board's decision.